■ THE PEOPLE OF THE STATE OF NEW YORK ex rel. HENRY GASKIN, Appellant, v HAROLD J. SMITH, as Superintendent of the Attica Correctional Facility, Respondent.—Judgment unanimously reversed and matter remitted to Board of Parole for a final revocation hearing in accordance with the following memorandum: Relator appeals from a judgment of Wyoming County Court which dismissed his petition for a writ of habeas corpus. Of the several contentions raised in that petition, the only one urged upon this court is that appellant was not accorded due process of law at a final parole revocation hearing which resulted in his return to prison. Prior to the hearing, written notice of the charges was served upon appellant's counsel. The three charges that were sustained by the board read as follows: "4. On 5/25/75, subject failed to lead a law-abiding life and to conduct himself as a good citizen in that he entered the residence of one Phillip Thomas, who resides at 34 Jefferson Terrace, Rochester, without his permission. 5. On 5/25/75, subject's behavior was a menace to the safety and well-being of another individual in that he shot one Clarence Louis Robinson in the left thigh. 6. On 5/25/75, subject had in his possession a firearm to wit: a hand gun." The board's evidence at the hearing consisted solely of the testimony of Barry D. Kaplan, who had been appellant's parole officer, and a written parole violation report prepared by Kaplan. The violation report contained a summary of a sworn deposition given to a police officer by Phillip Thomas,

referred to in Charge No. 4. With respect to Charge No. 5, the violation report summarized a deposition given to a police officer by Clarence Robinson. As to Charge No. 6, the violation report commented that the depositions and interview statements of Robinson and Thomas were "explicit" in identifying appellant as the person who shot Robinson. Neither Robinson nor Thomas was present at the hearing. Kaplan testified that he had a subpoena for Robinson but was "unable to serve it". The record is silent as to the reason for Thomas' absence. The violation report stated that appellant, in an interview with Kaplan, had denied Charges Nos. 4 through 6 and stated that he was at a bar at the time of the shooting. Appellant's counsel brought out at the hearing that appellant was "no-billed" by the Grand Jury in connection with the Robinson shooting incident. The Parole Board's written decision recited that Charges Nos. 4, 5 and 6 were "sustained by credible testimony of [Parole Officer Kaplan] and information in [the violation of parole] report". Appellant's parole was revoked and he was ordered held for two years. Appellant urges that the board, by failing to produce Thomas and Robinson as witnesses and resting its determination solely on hearsay information obtained from them, denied him the rights of confrontation and cross-examination. Hence, appellant concludes, the hearing failed to comport with the due process requirements for final parole revocation hearings enunciated in *Morrissey v Brewer* (408 US 471), which include, with an exception not here applicable, "the right to confront and cross-examine adverse witnesses" (p 489). Respondent counters that appellant may not complain of the board's failure to call the witnesses to the alleged violations because appellant never specifically requested that they be produced. A similar contention was rejected in *People ex rel. Gambino v Warden of City Prison of City of N. Y.* (43 AD2d 400, 403), where the court stated: "Respondent urges that the relator never asked that the witnesses to the claimed violations be produced. While the record shows no such specific request, a careful reading indicates that this was inherent in counsel's presentation. He repeatedly questioned the accuracy of the report and the factual specifications of the charges. We recognize the desirability of limiting revocation hearings to the essentials enabling the board to determine whether there has been a violation and, if so, the nature of it; nor do we intend to prescribe that a prima facie case of violation must be made out on common-law proof before the board can decide. The requirements in large measure will depend on the course that the particular hearing takes. In this case we are holding that the facts alleged in the report were specifically denied and, as a consequence, the report itself was insufficient as evidence on which the board could make a ruling." (See, also, *People ex rel. Warren v Mancusi,* 40 AD2d 279; *Matter of Davis v Regan,* 82 Misc 2d 105, 106; *People ex rel. Sammarco v Le Fevre,* 78 Misc 2d 882, 885; *People ex rel. Angell v Lynch,* 71 Misc 2d 921, 922.) Parole revocation hearings in New York are governed by 7 NYCRR Part 1925 (eff Dec. 30, 1974). The prescribed "notice of violation" is required to apprise the releasee that he "will be accorded an opportunity * * * to confront and cross-examine witnesses * * * *presented in support of the notice oi .iolation"* (7 NYCRR 1925.15 [c]). Similarly 7 NYCRR 1925.35 (g) provides that "the releasee shall be accorded an opportunity to * * * confront and cross-examine witnesses *presented in support of the notice of violation".* (Emphasis supplied.) 7 NYCRR 1925.35 (i) authorizes the releasee's attorney to issue subpoenas and subpoenas duces tecum. There is no provision which explicitly requires the board to produce live witnesses to corroborate hearsay violation reports. The failure of the board to produce adverse witnesses whose information is contained in the

violation report would not conflict with the language of 7 NYCRR Part 1925, nor would it put the New York rule in conflict with the Federal statutory rule (US Code, tit 18, § 4214, subd [a], par [2], cl [D]), at least where the parolee has not requested production of the witnesses. Respondent further contends, relying on *Richardson v Perales* (402 US 389), that in light of appellant's failure to subpoena Thomas and Robinson himself (as he could have done pursuant to 7 NYCRR 1925.35 [i]), he should be deemed to have waived his right to confront and cross-examine them. Although there was no obligation on the board to produce witnesses, the board should have tried to produce Thomas and Robinson. Their testimony was very material and relevant to the board's findings in Charges Nos. 4, 5 and 6. In short, "the specter of questionable credibility and veracity" which was "not present" in *Richardson* (p 407), looms large here. Another and somewhat peculiar factor in the present case is the Grand Jury's failure to indict appellant in connection with the Robinson shooting. While the nobill is not conclusive against the board's position *(People ex rel. West v Vincent,* 46 AD2d 782), it is a factor to be considered in respect of the likelihood that appellant committed the charged violations. Apart from the requirements of due process, we are mindful of an important practical consideration which militates against reliance upon the hearsay accusations of absent witnesses to reincarcerate a parolee who protests his innocence. As Chief Judge Fuld observed in a closely related context, "the parole system is an enlightened effort on the part of society to rehabilitate convicted criminals. Although few circumstances could better further that purpose than a belief on the part of such offenders in a fair and objective parole procedure, hardly anything could more seriously impede progress toward that important goal than a belief on their part that the law's machinery is arbitrary, too busy or impervious to the facts" *(People ex rel. Menechino v Warden, Green Haven State Prison,* 27 NY2d 376, 385–386; see, also, *Matter of Cummings v Regan,* 45 AD2d 222, 225–226; *Morrissey v Brewer, supra,* p 484, and n 11). Accordingly, we conclude, in the circumstances of this case, that appellant should have a new final revocation hearing at which the Board of Parole should produce the adverse witnesses, if they can be found. We recognize, however, that the board may limit any cross-examination " 'to the precise factual issue of the stated violation' " *(Matter of White v New York State Bd. of Parole,* 49 AD2d 908, 909). Finally, we note our disagreement with appellant's contention that he should be restored to parole forthwith in lieu of a new hearing. While such a disposition has received judicial sanction *(People ex rel. Angell v Lynch,* 71 Misc 2d 921, *supra; People ex rel. Van Burkett v Montanye,* 70 Misc 2d 907) and may be appropriate enough where the alleged violations are merely technical, immediate rerelease is inappropriate where, as here, the alleged violations are of a kind that bespeak a serious threat to public safety. However, the board should make provision for expedited hearings in such cases as this, lest long delay make pointless the parolee's assertion of his rights. (Appeal from judgment of Wyoming County Court—habeas corpus.) Present—Marsh, P. J., Moule, Dillon, Goldman and Witmer, JJ.