■    THE PEOPLE OF THE STATE OF NEW YORK ex rel. THOMAS H. ADAMS, Appellant, v LEON J. VINCENT, as Superintendent of the Green Haven Correctional Facility, Respondent.—In a consolidated habeas corpus and CPLR article 78 proceeding, petitioner appeals from a judgment of the Supreme Court, Dutchess County, dated October 24, 1975, which denied the writ and remanded the relator. Judgment reversed, on the law and the facts and in the interest of justice, without costs or disbursements, petition granted, and petitioner is directed to be restored to parole in accordance herewith. The record reveals that petitioner, Thomas H. Adams, was convicted of burglary in the third degree on August 29, 1972 and sentenced to an indeterminate term of imprisonment with a maximum of seven years. On or about December 30, 1974 he was paroled from prison to Our Brothers Place Alcoholic's Treatment Program, a halfway house in Millerton, New York. Shortly thereafter he was temporarily transferred to the Graymoor Mission in Garrison, New York, because the Millerton facility had been destroyed by a fire. There is also an indication in the record that steps were being taken, either at that time or previously, to permit Adams to enter a halfway house in Connecticut, the State in which he was born and raised, to continue his rehabilitation program from alcoholism. However, in January, 1975, George Gatins, petitioner's newly assigned parole officer, made an unannounced and unrequested visit to petitioner at the Graymoor facility. He had petitioner sign certain forms which, *inter alia,* permitted him to reside at his mother's home in Branford, Connecticut, and also pertained to his parole in Connecticut *if that State's parole authorities would accept him.* It is conceded that Gatins had not ascertained at the time whether the out-of-State parole board would entertain jurisdiction over petitioner. In issuing Adams a travel permit under these circumstances, Gatins clearly violated former section 224 of the Correction Law (now section 259-m of the Executive Law) which provided, *inter alia,* that with respect to compacts with other States, or outside of the State parole supervision, the contracting State shall not permit a parolee to reside in, or place him in, any other State, unless the receiving State shall have an opportunity to investigate the home and prospective employment of such person. In this instance no such investigations were made before the travel permit was issued. There is evidence that had an investigation been made as to petitioner's prospective residence at his mother's home, it would have been ascertained that there

was no room for him there because she was caring for two of his brothers who had heart conditions. In denying petitioner's application for a writ of habeas corpus and to vacate the revocation of parole, Special Term concluded, *inter alia,* that (1) Adams had committed a technical violation of his parole by not residing with his mother and not informing the New York parole authorities of that fact and (2) such violation had no real relationship to the initial mistake of the parole officer. While we agree with Special Term that petitioner was in technical violation regarding his residence (see *Matter of White v New York State Bd. of Parole,* 49 AD2d 908), we do not subscribe to the view that the parole officer's precipitate action in issuing the travel permit had no real bearing on what ensued. In our opinion the dislodging, under color of law, of a 54-year-old parolee with a severe problem of alcoholism from a controlled and sheltered surrounding, and allowing him to fend for himself in an environment which conceivably had contributed to his condition initially, had a very real and substantial relationship to the subsequent parole violation. Accordingly, we have directed that petitioner be restored to parole. Mollen, P. J., Hopkins, Titone, Shapiro and Hawkins, JJ., concur.